[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DE: THE PLAINTIFF'S APPLICATION TO CITE THEDEFENDANT IN CONTEMPT (#125)
The parties' marriage was dissolved by decree entered May 3, 1990 after an uncontested hearing. The parties' agreement was approved by the court and incorporated by reference into the judgment. In Article V the parties provided that the defendant father would pay $75 weekly per child for their two minor children. A formula was created so the child support would increase $15 weekly per child for each $10,000 increase in gross income from all sources, over his present annual gross income from all sources, or pro-rata for part. A floor of $60 was also agreed to, absent unforeseen change of circumstances.
By written agreement, accepted by the court on March 15, 1993, the child support for 1992 was modified to $85 per week per child, entered on the defendant's motion to modify dated May 12, 1992 (computer documents #121 and #122). The stipulation further provided that future computations of child support, commencing with 1993, were redefined as follows:
"3. For future computations of child support in accordance the said Separation Agreement, the term "gross income" shall include (a) the defendant's income from all Internal Revenue Service Form "W-2", and (b) in reference to any other business income reportable on Internal Revenue Form Schedule C (such as from income earned from work as Constable or from income earned from work as a professional wrestler) the defendant's income as stated on all Schedule C(s) line 29 (business income less bona fide tax deductible business deductions) on defendant's Federal Income Tax Return."
No further activity occurred until the plaintiff brought this application to cite the defendant for contempt dated September 9, 1996. The plaintiff alleges that the defendant failed to provide the plaintiff with his U.S. individual income tax return forms 1040. He did not. CT Page 1635
According to the plaintiff the defendant immediately began to pay $680 monthly from the date of the stipulation through 1993, 1994 and 1995 until June when $420 was paid monthly through the balance of the year and monthly in 1996 until the hearing date. The defendant, a state employee, was paid every two weeks and testified he sent $340 each time he was paid. The court accepts his version of the payments made as fact through May, 1995.
 Analyzing the modified formula, it indicates that ". . . gross income shall include . . . (b) . . . the defendant's income as stated on all schedule C(s) line 29 . . ."
The 1989 Form 1040, although joint, listed no W-2 wages for the defendant and a net profit of $11,886.05[1] for him (Plaintiff's Exhibit #1).
To determine the child support for 1993 the defendant's 1992 tax return line 29 (Plaintiff's Exhibit #2) lists $21,256.54. It exceeds the 1989 base by $9,370.49. The pro rota increase over $75 is $14.06 per week per child. He paid $85 per week per child, creating a deficit of $4.06 per child weekly or $422.24 for the year 1993.
For 1994 the defendant's 1993 tax return, line 29, lists $19,797.88 (Plaintiff's Exhibit #3). It exceeds the 1989 base by $7,911.83. The pro rata increase is $11.87 per week per child. He paid $85 per child weekly, creating a deficit of $1.87 per child weekly or $194.48. IRS redesigned the form 1040 for 1994 returns, changing line 29 on Schedule C to line 31. The court finds that the parties' modified agreement is intended to use "Net profit or (loss)" and the court is using the figure listed on line 31 of $41,230. It exceeds the 1989 base by $29,343.95. The increase is $30 per child per week plus the pro rata amount of $14 or a total of $44 weekly per child. The weekly payment per child is $119 through May, 1995. The defendant's deficit was $34 per child weekly or $1,496 for 22 weeks. For the seven months remaining for 1995 the defendant paid $420 monthly causing a deficit for 40 weeks as follows: $119 per week per child for the 40 weeks totals $9,520 less $2,940 paid creating a deficit of $6,580 for this span. The total deficit for 1995 is $8,076.
For 1996, the 1995 tax return of the defendant (Plaintiff's Exhibit #5) lists $30,522, net profit, and $300 of W-2 income, a total of $30,822, exceeding the base by $18,936. The adjustment is CT Page 1636 $15 per child plus the pro rota of $13.40 per child, a total weekly increase of $56.80 over the weekly base of $150 provided in the agreement, a total weekly obligation for 1996 of $206.80.
From January 1, 1996 to the date of hearing is 48 weeks. The total obligation is $9,926.40. The defendant continued to pay $420 per month for 11 months for a total payment of $4,620 and the deficit for 1996, as of the date of the hearing, is found to be $5,306.40.
The arrears is summarized as follows.
 1993 $ 422.24 1994 $ 194.48 1995 $ 8,076.00 1996 $ 5.306.40
Total $13,999.12
The defendant presented a defense involving the transfer of an interest in a rental property, claiming the rental income to be retained by the plaintiff was to be applied to child support. The property involved another financially irresponsible fractional owner who precipitated a foreclosure. This third party owner then sought bankruptcy protection, and the plaintiff and the defendant both sought to protect their credit ratings by saving the property. They were represented by counsel. Although the successful salvage attempt was documented (Plaintiff's Exhibit 6), it did not address any adjustment in child support. The defendant's resourceful explanation was, even if accepted by the plaintiff, oral and never presented to the court. The plaintiff's testimony that the defendant contributed to the private school expenses via the real estate transfer is equally credible. The court finds no agreement. However, since the defendant continued to pay child support in amounts he believed were acceptable, and continued to do so for an extended period of time before the plaintiff protested, convinces the court that the defendant was not and is not in wilful violation of the court order. No contempt is found.
The arrears is found to be $13,999.12 to be paid with $2,000 due on or before April 1, 1997 and thereafter at the rate of $50 weekly.
So Ordered CT Page 1637
HARRIGAN, J.